**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT**<br>**OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) | **Civil Action No. 0:23-cv-3030** |
| **v.** | ) ) | |
| | ) | |
| **UNION PACIFIC RAILROAD COMPANY,** | ) ) | |
| **Defendant.** | ) ) | |
| | ) | |

**COMPLAINT**

**NATURE OF THE ACTION**

This is an action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., to correct unlawful employment practices and to provide appropriate relief to Eric Aragon, Dale Carmen, Fred Coleman, Robert Corrington, Andy Dettke, Jerry Garcia, Chris Hurley, Kent Kirk, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Dennis Naatjes, John Pendergraft, Randall Reeves, Robert Sample, Stephen Vejar, Mark Walker, Timothy Wright, and Vern Wright (collectively, "Aggrieved Individuals"), who were affected by such practices. Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC"), alleges that Defendant Union Pacific Railroad ("Union Pacific") violated the ADA when it: (1) regarded the Aggrieved Individuals as disabled and terminated their employment on the basis of disability, in violation of § 12112(a); (2) used an unlawful qualification standard that screens out an individual with a disability or class of individuals with disabilities, in violation of § 12112(b)(6); and (3) subjected some of the Aggrieved Individuals to unlawful medical inquiries, in violation of § 12112(d)(4)(A).

1

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Minnesota and within Union Pacific's facilities in Minnesota, Illinois, Arizona, Idaho, California, Kansas, Nebraska, Oregon, Washington, and Texas.

## PARTIES

3.      Plaintiff, the EEOC, is the agency of the United States of America charged with administering, interpreting and enforcing the ADA, and is authorized to bring this suit by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and is further authorized by Title V of the ADA, 42 U.S.C. § 12203(c), which incorporates by reference the enforcement, remedies and procedures available under Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

4.      At all relevant times, Defendant has continuously been a Nebraska corporation doing business throughout the United States, including within the State of Minnesota. Defendant has continuously had at least 30,000 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C.

§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.      At all relevant times, Defendant Union Pacific has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7.      Defendant was the employer of the Aggrieved Individuals.

## ADMINISTRATIVE PROCEDURES

8.      More than 30 days before institution of this suit, Eric Aragon, Dale Carman, Fred Coleman, Robert Corrington, Andy Dettke, Jerry Garcia, Chris Hurley, Kent Kirk, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Dennis Naatjes, John Pendergraft, Randall Reeves, Robert Sample, Stephen Vejar, Mark Walker, Timothy Wright, and Vern Wright filed charges with the EEOC alleging that Union Pacific violated the ADA.

9.      On May 1, 2023, and on August 17, 2023, the EEOC issued to Union Pacific Letters of Determination finding reasonable cause to believe that Union Pacific discriminated against the above-named individuals and a class of similarly situated employees when Defendant regarded the Aggrieved Individuals as disabled, imposed permanent work restrictions on them, denied them FRA certification, barred them from performing their jobs, and placed them on involuntary, indefinite leaves of absence. in violation of the ADA. In addition, EEOC determined that Union Pacific unlawfully used a qualification standard that screens out or tends to screen out an individual with a disability or a class of individuals with disabilities in violation of the ADA and that Union Pacific made unlawful medical inquiries of some of the Aggrieved Individuals or required that they undergo unlawful medical examinations, in violation of the ADA.

10.      The Letters of Determination invited Union Pacific to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices

and provide appropriate relief.

11.     On June 21, 2023, and August 22, 2023, the EEOC issued to Union Pacific Notices of Failure of Conciliation, advising Union Pacific that the EEOC was unable to secure from Union Pacific a conciliation agreement acceptable to the Commission.

12.     All conditions precedent to the institution of this suit have been fulfilled.

## FACTUAL ALLEGATIONS

13.     Conductors and locomotives engineers must meet certification requirements of the Federal Railroad Administration ("FRA)," including, among other things, that they have the ability to recognize and distinguish between the colors of railroad signals. The FRA has identified 12 acceptable color-vision tests that railroads can use for determining whether a person has the ability to recognize and distinguish the colors of railroad signals.

14.     Union Pacific uses the 14-plate Ishihara test, which consists of a series of plates containing a pattern of dots that vary in color and size. The dots form a number or shape that is difficult for a person with color vision deficiency to see, or on some plates, that only a person with color vision deficiency can see.

15.     The FRA recognizes that individuals who fail one of the 12 accepted color vision tests may still have the ability to recognize and distinguish the color of railway signals and safely perform as conductors or operate a locomotive.

16.     FRA regulations provide that an individual who fails one of its accepted color vision tests, like the Ishihara test, can be sent for further evaluation, such as an ophthalmologic referral, field or other practical color testing, or another approved scientific test.

17.     Since in or about April 2016, Union Pacific has required individuals who fail the Ishihara test to take a test developed by Union Pacific, referred to as the "light cannon" test. The

light cannon test requires individuals to identify the color of a light on a mobile device placed a quarter of a mile away from the test taker. The light cannon test does not replicate actual conditions in which conductors or locomotive engineers view railway signals while on the job and does not accurately assess whether an employee has the ability to recognize and distinguish between the color of railway signals.

18.     The FRA allows Union Pacific to certify a conductor or locomotive engineer even if the individual has failed Union Pacific's requirement of passing the light cannon test if Union Pacific determines the individual can safely perform their job.

19.     During their most recent recertification testing, Eric Aragon, Dale Carmen, Andy Dettke, Jerry Garcia, Chris Hurley, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Robert Sample, Mark Walker, and Timothy Wright passed the Ishihara test, thereby satisfying the FRA's certification requirement with respect to color vision.

20.     Nonetheless, Union Pacific required the individuals named in paragraph 19, above, to take the light cannon test, which Union Pacific determined that they failed.

21.     Fred Coleman, Robert Corrington, Kent Kirk, Dennis Naatjes, John Pendergraft, Randall Reeves, Stephen Vejar, and Vern Wright failed the Ishihara test during their most recent recertification testing. Union Pacific then required them to take the light cannon test, which it determined that they failed.

22.     The individuals named in paragraph 21, above, presented medical evidence to Union Pacific showing that they did not have a color vision impairment that prevented them from accurately identifying the colors of railway signals.

23.     After determining that the Aggrieved Individuals failed the light cannon test, Union Pacific removed them from service, placed permanent restrictions on them barring them from

working in any position requiring accurate identification of colored railway signals, denied them FRA certification, and placed them on involuntary, indefinite leave.

24.     None of the Aggrieved Individuals has worked for Union Pacific as a conductor or locomotive engineer since Union Pacific placed permanent work restrictions on them.

## STATEMENT OF CLAIMS

### Count 1—Disparate treatment in violation of 42 U.S.C. § 12112(a)

25.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

26.     Since in or about April 2016 and continuing to the present, Union Pacific has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a).

27.     The Aggrieved Individuals were qualified individuals with a disability under Section 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8) of the ADA.

      a.     The Aggrieved Individuals all worked for the Defendant for at least two to over thirty years as conductors, locomotive engineers, brakeman, and/or other positions for which FRA certification is required.

      b.     Union Pacific regarded the Aggrieved Individuals as having an impairment of their color vision. Therefore, the Aggrieved Individuals were individuals with a disability under the ADA.

      c.     The Aggrieved Individuals had the requisite skill, experience, education, and other job-related requirements of their positions.

      d.     The Aggrieved Individuals were able to perform the essential functions of their jobs with or without reasonable accommodations.

e.      Union Pacific regarded them as having a disability by subjecting them to adverse employment actions because of an actual or perceived impairment of their color vision.

28.     Defendant removed the Aggrieved Individuals from service, placed permanent restrictions on them barring them from working in any position requiring accurate identification of colored railway signals, denied them FRA certification, and placed them on involuntary, indefinite leave, because of an actual or perceived impairment of their color vision, in violation of 42 U.S.C. § 12112(a).

29.     The effect of the unlawful employment practices complained of in paragraphs 24-28 above has been to deprive the Aggrieved Individuals of equal employment opportunities or otherwise adversely affect their status as employees because of disabilities.

30.     The unlawful employment practices complained of in paragraphs 24-28 above were and are intentional.

31.     The unlawful employment practices complained of in paragraphs 24-28 above were and are done with malice or with reckless indifference to the federally protected rights of the Aggrieved Individuals.

**Count 2—Unlawful Qualification Standard in Violation of 42 U.S.C. § 12112(b)(6)**

32.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

33.     Since in or about April 2016 and continuing to the present, Union Pacific has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(b)(6).

34.     Union Pacific's requirement that individuals who have failed the Ishihara test must pass the light cannon test to obtain or maintain FRA certification screens out individuals with a disability or a perceived disability, but who could continue to safely perform their jobs without accommodation.

35.     Requiring passage of the light cannon test to obtain or maintain FRA certification is an illegal qualification standard in violation of 42 U.S.C. § 12116(b)(6).

36.     The effect of the unlawful employment practices complained of in paragraphs 32-35 above has been to deprive the Aggrieved Individuals of equal employment opportunities or otherwise adversely affect their status as employees because of disabilities.

37.     The unlawful employment practices complained of in paragraphs 32-35 above were and are intentional.

38.     The unlawful employment practices complained of in paragraphs 32-35 above were and are done with malice or with reckless indifference to the Aggrieved Individuals' federally protected rights.

**Count 3—Unlawful Medical Examinations and Inquiries in violation of 42 U.S.C. § 12112(a) and (d)**

39.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

40.     During their most recent recertification testing Eric Aragon, Dale Carmen, Andy Dettke, Jerry Garcia, Chris Hurley, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Robert Sample, Mark Walker, and Timothy Wright passed the Ishihara test, thereby satisfying the FRA's certification requirement with respect to color vision.

41.     Defendant made inquiries to Eric Aragon, Dale Carmen, Andy Dettke, Jerry Garcia, Chris Hurley, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Robert Sample, Mark Walker, and Timothy Wright as to whether they were individuals with a disability by requiring that they complete a vision history form prior to taking the light cannon test. The vision history form contained questions that elicited information about whether the employees had a variety of vision-related disabilities. Union Pacific's inquiries violated 42 U.S.C. § 12112(d)(4)(A).

42.     In addition, Union Pacific required Dale Carmen, Andy Dettke, Merlin Kulicke, Roy Myers to undergo a medical examination after they passed the Ishihara test, in violation of § 12112(d)(4)(A).

43.     The effect of the unlawful employment practices complained of in paragraphs 39-42 above has been to deprive these individuals of equal employment opportunities or otherwise adversely affect their status as employees because of disabilities.

44.     The unlawful employment practices complained of paragraphs 39-42 above were intentional.

45.     The unlawful employment practices complained of in 39-42 above were done with malice or with reckless indifference to these individuals' federally protected rights.

<u>PRAYER FOR RELIEF</u>

Wherefore, the EEOC respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Union Pacific, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the

9

basis of disability, and enjoin Union Pacific from engaging in unlawful medical inquiries.

B.     Order Union Pacific to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Union Pacific to make the Aggrieved Individuals whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including rightful-place reinstatement of the Aggrieved Individuals;

D.     Order Union Pacific to make the Aggrieved Individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

E.     Order Union Pacific to make the Aggrieved Individuals whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, humiliation, inconvenience, and mental anguish, in amounts to be determined at trial.

F.     Order Union Pacific to pay the Aggrieved Individuals punitive damages for the malicious and reckless conduct complained of above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the EEOC its costs in this action.

<u>JURY TRIAL DEMAND</u>

The EEOC requests a jury trial on all questions of fact raised by its complaint.

Date: September 29, 2023                    Respectfully submitted,


CHRISTOPHER LAGE
Deputy General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street, N.E.
Washington, D.C. 20507

GREGORY M. GOCHANOUR
Regional Attorney

<u>/s/ Ethan M.M. Cohen</u>
ETHAN M. M. COHEN
Assistant Regional Attorney

<u>/s/ Ann Henry</u>
ANN HENRY
Acting Supervisory Trial Attorney

<u>/s/ Tina Burnside</u>
TINA BURNSIDE
Senior Trial Attorney

<u>/s/ W. Emma Heo</u>
EMMA HEO
Trial Attorney (IL Bar #6337680)
U.S. Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn Street
Chicago, IL 60604
312-872-9740
Emma.heo@eeoc.gov