UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission, | File No. 23-cv-3030 (ECT/DLM) |
| Plaintiff, | |
| and | **OPINION AND ORDER** |
| Eric Aragon, Dale Carman,[1] Fred Coleman, Robert Corrington, Andy Dettke, Jerry Garcia, Chris Hurley, Kent Kirk, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Dennis Naatjes, John Pendergraft, Randall Reeves, Robert Sample, Stephen Vejar, Timothy Wright, and Vern Wright, | |
| Intervenors, | |
| v. | |
| Union Pacific Railroad Company, | |
| Defendant. | |

---

Jonathan Delozano, Ethan Michael Morley Cohen, Ann Henry, Kelly Jane Bunch, and Won Emma Heo, Equal Employment Opportunity Commission, Chicago, IL, for Plaintiff U.S. Equal Employment Opportunity Commission.

Scott P. Moore, Jeremiah Charles Hollembeak, and Mark Joseph Goldsmith, Baird Holm LLP, Omaha, NE, for Defendant Union Pacific Railroad Company.

Jacob Harksen, James H. Kaster, Lucas J. Kaster, Laura Baures, and Charles A. Delbridge, Nichols Kaster PLLP, Minneapolis, MN; and Anthony S. Petru and Gavin Scott Barney,

---

[1]   Some documents, including the Complaint, refer to "Dale Carmen," *see* ECF No. 1 ¶¶ 1, 19, 40–42, but this individual's Charge of Discrimination reads "Carman," *see* ECF No. 14-2. The better guess is that "Carman" is the correct spelling.

Hildebrand, McLeod & Nelson, LLP, Oakland, CA, for Intervenors Eric Aragon, Dale Carman, Fred Coleman, Robert Corrington, Andy Dettke, Jerry Garcia, Chris Hurley, Kent Kirk, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Dennis Naatjes, John Pendergraft, Randall Reeves, Robert Sample, Stephen Vejar, Timothy Wright, and Vern Wright.

---

The Federal Railroad Administration (or "FRA") sets railroad safety standards. Those standards require certain railroad employees to meet certification requirements including, among other things, passing a color-vision test. Defendant Union Pacific Railroad Company subjected its engineers and conductors to two visual-acuity tests. One test is accepted explicitly by FRA regulations. The other, called a "light cannon" test, is not. When twenty-one employees failed the light-cannon test, Union Pacific removed them from their jobs.

On behalf of the removed employees, Plaintiff Equal Employment Opportunity Commission brought a three-count complaint alleging violations of the Americans with Disabilities Act. Union Pacific moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The motion will be denied because the EEOC plausibly alleges that Union Pacific violated the ADA.[2]

---

[2] Twenty of the twenty-one removed employees sought to intervene under Rule 24(a)(1). ECF No. 25. Pursuant to the parties' stipulation, that motion was granted. ECF No. 47. The one former Union Pacific employee who did not seek to intervene in this case is Mark Walker; he sued Union Pacific in a separate case. *See Walker v. Union Pac. R.R. Co.*, No. 3:22-cv-01011-JR (D. Or.). The district judge in that case recently adopted a report and recommendation on competing summary-judgment motions. *Walker v. Union Pac. R.R. Co.*, No. 3:22-CV-01011-JR, 2023 WL 10354310 (D. Or. Dec. 18, 2023) [hereinafter *Walker R. & R.*], *report and recommendation adopted*, 2024 WL 1052678 (D. Or. Mar. 11, 2024). To summarize, the court granted Walker's partial-summary-judgment motion, finding an affirmative defense inapplicable and that Walker is a qualified individual with a perceived disability. *Walker*, 2024 WL 1052678, at *2. Union Pacific's

I[3]

Plaintiff EEOC is the federal agency tasked with administering and enforcing the ADA. Compl. [ECF No. 1] ¶ 3. The twenty-one engineers and conductors on whose behalf the EEOC filed this case worked for Union Pacific for periods lasting between two and thirty years. *Id.* at 1 & ¶ 27(a); ECF Nos. 14-1 to 14-21. They will be referred to collectively as "Claimants."

The Secretary of Transportation may prescribe regulations "for every area of railroad safety." 49 U.S.C. § 20103(a). The Federal Railroad Administration, as an agency of the Department of Transportation, has promulgated regulations describing qualifications for railroad locomotive engineers and conductors. 49 C.F.R. § 240.1 *et seq.* (engineers); 49 C.F.R. § 242.1 *et seq.* (conductors); *see also* Compl. ¶ 13. One such qualification is the "ability to recognize and distinguish between the colors of railroad signals." Compl. ¶ 13.

The FRA has identified twelve acceptable color-vision tests that railroads may use to determine whether a person can adequately distinguish the colors of railroad signals. *Id.*; *see also* 49 C.F.R. § 240, app. F(2); 49 C.F.R. § 242, app. D(2) (listing accepted tests).[4] Individuals who fail one of the twelve accepted tests "can be sent for further evaluation, such as an ophthalmologic referral, field or other practical color testing, or another

---

summary-judgment motion was granted as to Walker's failure-to-accommodate claim but denied in all other respects. *Id.*

3   In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn from the Complaint, materials embraced by it, and applicable legal authorities. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

4   The accepted tests outlined in § 240, App. F (for engineers) and § 242, App. D (for conductors) are identical.

3

approved scientific test." Compl. ¶ 16; *see, e.g.*, 49 C.F.R. § 240.121(e) ("A person not meeting the thresholds . . . of this section shall, upon request, be subject to further medical evaluation by a railroad's medical examiner to determine that person's ability to safely operate a locomotive."). The inference is that those individuals who fail an accepted test but can safely perform their job duties may still be certified. Compl. ¶¶ 15–16, 18; *see, e.g.*, 49 C.F.R. § 240.121(e) ("If . . . the medical examiner concludes that, despite not meeting the threshold(s) . . . the person has the ability to safely operate a locomotive, the person may be certified as a locomotive engineer . . . .").

Union Pacific required the Claimants to take two visual acuity tests: the 14-plate Ishihara test and the Union Pacific-developed "light cannon" test. Compl. ¶¶ 14, 17. The Ishihara test is one of the twelve accepted tests outlined in the Federal Regulations. *See* Def.'s Mem. in Supp. [ECF No. 13] at 3–4; 49 C.F.R. § 240, app. F(2); 49 C.F.R. § 242, app. D(2). During the Ishihara test, subjects are shown colored dots that form a number; a person with a vision deficiency will have difficulty reading the number or will read a number only visible to someone with a deficiency. Compl. ¶ 14. Union Pacific's light-cannon test is not one of the twelve accepted tests listed in the regulations. *See* 49 C.F.R. § 240, app. F; 49 C.F.R. § 242, app. D. The light-cannon test requires test takers to identify the color of a light on a mobile device a quarter mile away. Compl. ¶ 17. Of central significance here, the EEOC alleges the light-cannon test "does not replicate actual conditions in which conductors or locomotive engineers view railway signals" and "does not accurately assess whether an employee has the ability to recognize and distinguish between the color of railway signals." *Id.*

4

Each Claimant took both tests and failed at least one. *Id.* ¶¶ 19–21. One group of Claimants ("Group 1")[5] passed the Ishihara test but failed the light-cannon test. *Id.* ¶¶ 19–20. After they passed the Ishihara test, Union Pacific required the Group 1 Claimants to complete a "vision history form" that asked, among other questions, whether they had vision-related disabilities. *Id.* ¶ 41. Union Pacific further required four of the Group 1 Claimants to undergo medical examination. *Id.* ¶ 42. Union Pacific then required all thirteen Group 1 Claimants to take the light-cannon test. *Id.* ¶ 20. The remaining eight Claimants ("Group 2")[6] took and failed both the Ishihara and the light-cannon tests. *Id.* ¶ 21. The Group 2 Claimants presented medical evidence to Union Pacific showing, notwithstanding their failure to pass both tests, "that they did not have a color vision impairment that prevented them from accurately identifying the colors of railway signals." *Id.* ¶ 22.

After determining that all twenty-one Claimants had failed the light-cannon test, Union Pacific "removed them from service, placed permanent restrictions on them barring them from working in any position requiring accurate identification of colored railway signals, denied them FRA certification, and placed them on involuntary, indefinite leave." *Id.* ¶ 23. The EEOC alleges the Claimants were terminated from employment. *Id.* at 1.

---

[5]  Those thirteen Claimants are Eric Aragon, Dale Carman, Andy Dettke, Jerry Garcia, Chris Hurley, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Robert Sample, Mark Walker, and Timothy Wright. Compl. ¶ 19.

[6]  The eight Claimants in Group 2 are Fred Coleman, Robert Corrington, Kent Kirk, Dennis Naatjes, John Pendergraft, Randall Reeves, Stephen Vejar, and Vern Wright. Compl. ¶ 21.

Each Claimant filed a charge with the EEOC, alleging Union Pacific discriminated against them based on a disability. Compl. ¶ 8; ECF Nos. 14-1–14-21. The EEOC issued letters of determination, finding reasonable cause to conclude that Union Pacific discriminated against the Claimants by terminating them because of a visual disability. Compl. ¶ 9.

The EEOC subsequently brought this case, asserting three causes of action under the ADA. Count 1 is a disparate-treatment claim under 42 U.S.C. § 12112(a). *Id.* ¶¶ 25–31. Count 2 alleges Union Pacific imposed unlawful qualification standards in violation of § 12112(b)(6). *Id.* ¶¶ 32–38. And Count 3 asserts Union Pacific pursued unlawful medical examinations and inquires under § 12112(a) and (d). *Id.* ¶¶ 39–45. The EEOC seeks injunctive relief, compensatory and punitive damages, and costs. *Id.* at 9–11 ¶¶ A–H (under "Prayer for Relief"). Union Pacific seeks dismissal under Rule 12(b)(6), arguing that each of the EEOC's three claims is not plausibly alleged and that, regardless, a statute of limitations bars the EEOC from pursuing the claims of eighteen of the twenty-one claimants.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads

6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

A federal court does not ordinarily consider matters outside the pleadings on a motion to dismiss, *see* Fed. R. Civ. P. 12(d), but there are exceptions for "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)); *see Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (recognizing that a court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record") (citation omitted).

Here, Union Pacific asks that several documents beyond the complaint be considered in the adjudication of its Rule 12(b)(6) motion. These documents include each Claimant's EEOC charge, *see* ECF No. 14 ¶¶ 1–21 and ECF Nos. 14-1–14-21, as well as decisions issued by the Federal Railroad Administration's Locomotive Engineer Review Board and the Federal Railroad Administration's Operating Crew Review Board, ECF No. 14 ¶¶ 22–23 and ECF Nos. 14-22–14-23. The Federal Railroad Administration Board "reviews petitions submitted by current and prospective locomotive engineers and conductors who are challenging a railroad's decision to deny their certification or

recertification, or to revoke their certification." *FRA Review of Railroad Certification Decisions*, U.S. Dept. of Transp., https://railroads.dot.gov/divisions/operating-practices/fra-review-railroad-certification-decisions (last visited July 7, 2024). In one decision, the Board denied a petition filed by Claimant Pendergraft challenging the revocation of his locomotive engineer certification. ECF No. 14-22. In the second decision, the Board denied a petition filed by non-claimant G.D. Marlow challenging the revocation of his conductor recertification. ECF No. 14-23. In both decisions, the Board appeared to accept that the validity of Union Pacific's light-cannon test. *See* ECF No. 14-22 at 3 ("[T]he Board finds that the 'light cannon' field test is an adequate field test as contemplated by 49 C.F.R. Part 240, Appendix F, paragraph (4)."); ECF No. 14-23 at 4 (finding light-cannon test's administration to be in accordance with applicable regulations).

In cases alleging employment discrimination, courts routinely find that an EEOC charge is embraced by the pleadings. *See, e.g.*, *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("We have previously held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss."); *Lopez v. Amazon.com Servs., LLC*, No. 23-cv-6 (JRT/DLM), 2023 WL 4203087, at *3 n.1 (D. Minn. June 27, 2023); *Jackson v. Minn. Dep't of Human Servs.*, No. 20-cv-749 (ECT/TNL), 2021 WL 1111075, at *3 n.4 (D. Minn. Mar. 23, 2021). And courts often rely on an EEOC charge to determine the charge's filing date, the nature (though not the truth) of a claimant's charges, and similar matters. *See, e.g.*, *Jackson*, 2021 WL 1111075, at *3 n.4; *Oduro-Amoako v. Delta Air Lines, Inc.*, No. 23-cv-3400 (ECT/JFD), 2024 WL 3183176, at *3

8

(D. Minn. June 26, 2024) (citing *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011)).

The Operating Crew Review Board decisions pose a different problem. Union Pacific argues that these documents are public records of which a court may take judicial notice under Federal Rule of Evidence 201. Rule 201 says, in relevant part:

> **(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
>
> **(1)** is generally known within the trial court's territorial jurisdiction; or
>
> **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
> **(c) Taking Notice.** The court:
>
> **(1)** may take judicial notice on its own; or
>
> **(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.

Fed. R. Evid. 201(b)–(c).

Several rules govern Rule 201's application. Textually, Rule 201 says that a court may take judicial notice of "a fact." *Id.* It does not say that a court may take judicial notice of a document. No doubt a party may rely on a document to establish a fact that may be judicially noticed. *See, e.g.*, *Klossner v. IADU Table Mound MHP, LLC*, 565 F. Supp. 3d 1118, 1123 (N.D. Iowa 2021) (recognizing that "[c]ourts may properly take judicial notice of newspapers and other publications as evidence of what was in the public realm at the time"). But as our Eighth Circuit Court of Appeals has explained, taking judicial notice of

9

facts in documents is generally inappropriate to the extent the documents are offered for the "truth of the matters within them and inferences to be drawn from them." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 n.4 (8th Cir. 2015) (quoting *Kushner v. Beverly Enters.*, 317 F.3d 820, 832 (8th Cir. 2003)); *see Klossner*, 565 F. Supp. 3d at 1123 (recognizing that a court may not take judicial notice of a document "as evidence that the contents in the publication were accurate"); *Wolfbauer v. Ocwen Loan Servicing, LLC*, No. 18-cv-13, 2018 WL 11513424, at *2 (D. Neb. July 6, 2018) ("[T]he Court cannot judicially notice documents for the truth of the matters asserted in them."). "Caution must also be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules." *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009).

Applying these rules here shows that it would be inappropriate to take judicial notice of the Operating Crew Review Board decisions for the purpose Union Pacific offers them. Union Pacific would rely on these decisions to establish that the light-cannon test is "another approved scientific screening test or a field test," as required by federal regulations. Def.'s Mem. in Supp. [ECF No. 13] at 4. But this is a matter the EEOC disputes. *See* Compl. ¶ 17 ("The light cannon test does not replicate actual conditions in which conductors or locomotive engineers view railway signals while on the job and does not accurately assess whether an employee has the ability to recognize and distinguish between the color of railway signals."). It might be different if Operating Crew Review Board decisions were precedential. But they are not. 49 C.F.R. §§ 240.409(u)(5), 242.509(u)(5); *see also Walker R. & R.*, 2023 WL 10354310, at *12 n.14 ("Union Pacific's

10

reliance on other Operating Crew Review Board decisions to establish the validity of its Light Cannon CVFT are unavailing"). Union Pacific identifies no other justification to consider the decisions.

### III

### A

The EEOC claims in Count I that Union Pacific violated the ADA when it regarded the Claimants as disabled and took adverse employment action against them, including denying them certification and barring them from performing certain duties. Compl. ¶¶ 25–31. Union Pacific argues Count I should be dismissed because the Claimants were not "qualified" owing to their failure to pass a visual acuity test and their resulting lack of certification.

The ADA prohibits employers from discriminating against "qualified individual[s] on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead an ADA disparate-treatment claim, "a plaintiff must plausibly allege that she '(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability.'" *Tipcke v. Olmsted Med. Ctr.*, No. 22-cv-2470 (ADM/JFD), 2023 WL 2776098, at *5 (D. Minn. Apr. 4, 2023) (quoting *Hill v. Walker*, 737 F.3d 1209, 1216) (8th Cir. 2013)). A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

11

Courts apply a two-part test to determine whether an individual is qualified: first, they "ask whether the individual 'possesses the requisite skills, education, certification or experience necessary for the job,'" and second, "whether the individual 'can, despite [his] impairments, perform the essential functions of the job either with or without reasonable accommodation.'" *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 923 (8th Cir. 2018) (alteration in original) (quoting *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015)). The FRA sets the minimum visual acuity necessary for engineers and conductors to be certified, which includes passing one of the accepted color tests. 49 C.F.R. § 240, app. F(2); § 242, app. D(2).

The EEOC plausibly alleges the Claimants were qualified. With respect to the Group 1 Claimants, the EEOC alleges they passed the FRA-accepted Ishihara test. Compl. ¶¶ 19–20. The Group 1 Claimants thus plausibly allege they met the standards in 49 C.F.R. §§ 240.121(c)(3), 242.117(h)(3) and would be qualified under the ADA but for Union Pacific's withholding of certification based on the Group 1 Claimants' failure to pass Union Pacific's light-cannon test. *See Walker R. & R.*, 2023 WL 10354310, at *6 ("Only if a person fails to successfully complete the Ishihara or other scientific method enumerated in Appendix F is secondary testing implicated."); *see also id.* at *12 ("[T]he FRA regulations relevant to this case did not require (or, arguably, even permit) secondary field testing as a condition of employment after the passage of the primary scientific method[.]"). The EEOC plausibly alleges, in other words, that the Group 1 Claimants passed the accepted test, should not have undergone secondary testing, and should have been certified.

12

As to the Group 2 Claimants, if an examinee fails one of the accepted tests listed in the regulations, that person is "subject to further medical evaluation by a railroad's medical examiner to determine that person's ability to safely operate a locomotive," 49 C.F.R. § 240.121(e), or "to safely perform as a conductor," 49 C.F.R. § 242.117(j). In such cases,

> Ophthalmologic referral, field testing, or other practical color testing may be utilized depending on the experience of the examinee. The railroad's medical examiner will review all pertinent information and, under some circumstances, may restrict an examinee who does not meet the criteria from operating the train at night, during adverse weather conditions or under other circumstances. The intent of § 240.121(e) [and § 242.117(j)] is not to provide an examinee with the right to make an infinite number of requests for further evaluation, but to provide an examinee with at least one opportunity to prove that a hearing or vision test failure does not mean the examinee cannot safely operate a locomotive or train. Appropriate further medical evaluation could include providing another approved scientific screening test or a field test. All railroads should retain the discretion to limit the number of retests that an examinee can request but any cap placed on the number of retests should not limit retesting when changed circumstances would make such retesting appropriate. Changed circumstances would most likely occur if the examinee's medical condition has improved in some way or if technology has advanced to the extent that it arguably could compensate for a hearing or vision deficiency.

49 C.F.R. § 240, app. F(4); *see also* 49 C.F.R. § 242, app. D(4) (citing 49 U.S.C. § 242.117(j) but otherwise using identical language). The FRA has clarified in an interim interpretation document that, while the regulations

> grant discretion to railroads in selecting a test protocol, FRA's longstanding interpretation of this provision is that the test offered by a railroad must be a valid, reliable, and comparable test for assessing whether a person who fails an initial vision test can safely perform as a locomotive engineer or conductor.

13

Best Practices for Designing Vision Field Tests for Locomotive Engineers or Conductors, 80 Fed. Reg. 73122, 73124 (Nov. 24, 2015).

Here, the EEOC alleges that because the Group 2 Claimants failed the Ishihara test, they were properly entitled to a retest, and the dispute is whether the light-cannon test is a "valid, reliable, and comparable test." *Id.* The EEOC plausibly alleges it is not. The EEOC alleges the light-cannon test "does not replicate actual conditions in which conductors or locomotive engineers view railway signals while on the job and does not accurately assess whether an employee has the ability to recognize and distinguish between the color of railway signals." Compl. ¶ 17. And, the EEOC alleges, the fact that each Claimant performed his job duties for anywhere from two to thirty years further shows that each Claimant was qualified. Compl. ¶ 27(a), (c), (d).

B

In Count 2, the EEOC alleges Union Pacific imposed unlawful qualification standards in violation of 42 U.S.C. § 12112(b)(6). The ADA defines "discriminat[ion] against a qualified individual on the basis of disability" to include "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities[.]" 42 U.S.C. § 12112(a), (b)(6). However, if the standard, test, or other selection criteria "is shown to be job-related for the position in question and is consistent with business necessity," it is not unlawfully discriminatory. 42 U.S.C. § 12112(b)(6).

Union Pacific advances three legal challenges to this claim, but none is persuasive. (1) Union Pacific argues that the EEOC's claim does not meet § 12112(b)(6)'s text. The

14

statute prohibits discrimination "against a qualified individual *on the basis of disability*." 42 U.S.C. § 12112(a). (emphasis added). The EEOC's claim is based on the allegation that the Claimants were "regarded as" having a disability. Union Pacific says an individual must be disabled—not merely regarded as having a disability—to assert an unlawful-qualification-standard claim. The ADA's text does not support this contention. It defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A–C); *see also* 29 C.F.R. § 1630.2(l)(1) ("[A]n individual is 'regarded as having such an impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity. Prohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment."). In other words, § 12112(b)(6)'s use of "disability" is better understood to include individuals who are "regarded as" having a disability. This construction is supported by persuasive authorities. *See, e.g.*, *Brasier v. Union Pac. R.R. Co.*, No. CV-21-00065-TUC-JGZ (MSA), 2023 WL 2754007, at *15 (D. Ariz. Mar. 31, 2023) (noting that accepting Union Pacific's argument would mean that "employers may regard employees as disabled and discriminate against them based on that perception but avoid ADA liability because their perception turned out to be incorrect").

15

(2) Union Pacific argues that the light-cannon test is an adequate field test under the controlling regulations. Def.'s Mem. in Supp. at 4, 12. As support for this contention, Union Pacific relies on the two Operating Crew Review Board decisions described above. For the reasons already explained, these decisions cannot be accepted at this stage for the truth of this conclusion. The light-cannon test's validity raises fact questions warranting discovery.

(3) Union Pacific argues that the light-cannon test is permissible as a "business necessity" under § 12112(b)(6). To support this argument, Union Pacific cites three cases—*Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999); *Bey v. City of New York*, 999 F.3d 157 (2d Cir. 2021); *Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332 (4th Cir. 2022))—for the proposition that it may impose higher standards than those imposed by FRA regulations. Def.'s Mem. in Supp. at 12–16. Union Pacific is correct in one respect. FRA regulations permit a railroad to impose stricter visual acuity standards than required by law. *See* 49 C.F.R. § 240.1(b) ("This part does not restrict a railroad from adopting and enforcing additional or more stringent requirements not inconsistent with this part."). Union Pacific's argument fails nonetheless because "business necessity" is an affirmative defense that is generally inappropriate for resolution on a Rule 12(b)(6) motion. *See* 29 C.F.R. § 1630.15(c) ("It may be a defense to a charge of discrimination brought under this part that a uniformly applied standard, criterion, or policy has a disparate impact on an individual with a disability or a class of individuals with disabilities that the challenged standard, criterion or policy has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished with reasonable accommodation,

16

as required in this part."); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised."); *United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106, 1118 (D. Minn. 2010) ("Indeed, affirmative defenses are generally not a basis for a motion to dismiss under 12(b)(6) but rather a matter to be pleaded as an affirmative defense. Such defenses may only serve as a basis for a motion to dismiss where the complaint *clearly* shows the existence [of] a defense." (alteration in original) (citations omitted)). The proper time to consider the business-necessity question is at summary judgment, as happened in *Albertson's*, *Bey*, and *Coffey*.

C

The EEOC claims in Count 3 that Union Pacific subjected Claimants to unlawful medical examinations and inquiries when it required the Group 1 Claimants—who had passed the accepted Ishihara test—to complete a vision history form and when it required four Group 1 Claimants to undergo a medical examination after they passed the Ishihara test. Compl. ¶¶ 41–42. Union Pacific does not specifically address Count 3 in its motion to dismiss.

The ADA's prohibition on discrimination "against qualified individual[s] on the basis of disability," 42 U.S.C. § 12112(a) includes a prohibition on "medical examinations and inquiries," 42 U.S.C. § 12112(d). Employers "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability . . . unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

17

The EEOC plausibly alleges that Union Pacific made inquiries of the Group 1 Claimants in violation of § 12112(d)(4)(A). The EEOC's theory is straightforward. It alleges that the Group 1 Claimants passed the Ishihara test, but Union Pacific nonetheless required them to "complete a vision history form . . . . [which] contained questions that elicited information about whether the employees had a variety of vision-related disabilities." Compl. ¶ 41. The EEOC also plausibly alleges Union Pacific required medical examinations of four Group 1 employees when it required "Dale Carm[a]n, Andy Dettke, Merlin Kulicke, [and] Roy Myers to undergo a medical examination" after they passed the Ishihara test. *Id*. ¶ 42.

IV

Union Pacific argues that eighteen of the twenty-one Claimants'[7] claims are time-barred. Under 42 U.S.C. § 2000e-5(e)(1), a charge "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." The EEOC argues that the timeliness defense is not established on the face of the Complaint, and thus the Court need not reach the issue. Pl.'s Mem. in Opp'n [ECF No. 34] at 27–28. Regardless, the EEOC argues, the claims are timely under three theories: (1) the statute of limitations was tolled while the Claimants were members of a class action, (2) the EEOC can seek relief under Section 706 for individuals who did not timely file, and (3) the doctrine of continuing violation permits this suit. *Id.* at 27–44.

---

[7] The excepted Claimants are McSwain, Vejar, and Walker.

The EEOC's tolling argument is persuasive. Each Claimant asserted in his charge of discrimination that he was a member of a class-action suit. ECF Nos. 14-1–14-21; *cf. Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1039 (8th Cir. 2020) (reversing class certification on grounds that predominance was lacking). The Supreme Court has held that statutes of limitations toll for all intervenors and class members while a class is certified until certification is reversed. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983) (applying *American Pipe* to all class members, not just intervenors); *Catlin v. Wal-Mart Stores, Inc.*, 123 F. Supp. 3d 1123, 1128 (D. Minn. 2015) (tolling EEOC claim because of class-action suit). The *Harris* class was decertified on March 24, 2020, and all Claimants filed their charges within 300 days of the decision. *See* ECF Nos. 14-1–14-21 (showing each was filed between February and May 2020). The charges assert that the statute of limitations has been tolled since the *Harris* litigation began on February 19, 2016, and all Claimants allege discrimination occurring after that period. Accordingly, when tolling the statute of limitations for the *Harris* class-action suit, the claims here fall within the 300-day window.[8]

---

[8] Union Pacific cites *National Railroad Passenger Corp. v. Morgan* for the assertion that "a claimant under Section 706 [of Title VII] can only seek remedies for unlawful actions that occurred within the charge period; actions that occurred prior to the charge period are time-barred, even if they arguably relate to conduct within the period." Def.'s Reply Mem. [ECF No. 42] at 17 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). But *Morgan* expressly permits tolling. *Morgan*, 536 U.S. at 105 ("The

**ORDER**

Therefore, based on the foregoing, and on the files, records, and proceedings herein,

**IT IS ORDERED THAT**:

1. Defendant's Request for Judicial Notice [ECF No. 14] is **GRANTED** as to the Claimants' Charges of Discrimination [ECF Nos. 14-1–14-21], and **DENIED** as to the Operating Crew Review Board decisions [ECF Nos. 14-22, 14-23].

2. Defendant Union Pacific's Motion to Dismiss [ECF No. 17] is **DENIED**.

3. Plaintiff-Intervenors' Motion for Leave to File Notice of Supplemental Authority [ECF No. 55] is **DENIED as moot**.

Dated: July 8, 2024

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court

---

application of equitable doctrines, however, may either limit or toll the time period within which an employee must file a charge."); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Though Union Pacific cites several cases demonstrating that EEOC is not immune from a statute-of-limitations defense, Def.'s Mem. in Supp. at 18–19, none rebut the EEOC's tolling argument.