UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission, | Case No. 23-cv-3030 (ECT/DLM) |
| Plaintiff, | |
| and | |
| Eric Aragon, Dale Carman, Fred Coleman, Robert Corrington, Andy Dettke, Jerry Garcia, Chris Hurley, Kent Kirk, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Dennis Naatjes, John Pendergraft, Randall Reeves, Robert Sample, Stephen Vejar, Timothy Wright, Vern Wright, Donald Barkmeier, Mike Bray, Jamaal Bunzy, Josh Butler, Paul Casares, James Davis, Rick Dickinson, Gary Downey, John Findley, Ralph Freed, Doug Harpster, Troy Heinzle, Lance Jenkins, Joseph Jones, Lance Lindquist, Gary Marlow, Matthew McCrillis, William Medich, Felipe Mojarro, Brian Murdock, Jason Norment, David O'Brien, Justin O'Dell, Shawn O'Neil, Gerald Ogle, Jeffrey Olson, Wayne Page, Wayne Palmer, John Pyka, Joshua Red Eagle, Michael Seematter, Marc Shannon, Jerrell Smith, Nathaniel Walker, Cory Walker, Corbin Williams, Carl Williams, Douglas Witte, Calvin Smith, and Ronald Garner, | **ORDER ON PLAINTIFF'S MOTION TO COMPEL RESPONSE TO EEOC'S INTERROGATORY 7** |
| Plaintiff-Intervenors, | |
| v. | |
| Union Pacific Railroad Company, | |
| Defendant. | |

This case is about the interplay of federal antidiscrimination law and railway safety. Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC"), joined by several individual intervenors, has sued Defendant Union Pacific Railroad Company ("Union Pacific") under the Americans with Disabilities Act of 1990 ("ADA"). (*See generally* Doc. 1.) The heart of the EEOC's case is that Union Pacific uses a color vision test—referred to as the "light cannon" test—that inappropriately screens out qualified railroad conductors and engineers, regardless of whether those employees actually have a color vision deficiency, and regardless of whether those employees could safely do their jobs (including having the ability to recognize the color of railway signals).

The EEOC propounded a discovery request—Interrogatory 7—that seeks information about what safeguards Union Pacific has to mitigate the risk of harm if an engineer or conductor misses a train signal. Union Pacific objected and did not substantively respond, resulting in the EEOC filing the instant Motion to Compel. (Docs. 128 (motion), 130 (memorandum in support).) Union Pacific opposes the EEOC's Motion, asserting that mitigating measures are not relevant to any issue in dispute, since this lawsuit is about whether Union Pacific's light cannon test is a legitimate color vision metric, and not about what to do if someone misses or misapprehends the color of a train signal. (Doc. 136.)

The Court heard argument on the EEOC's Motion on August 26, 2025, and the matter is now fully submitted. As discussed below, the Court grants the EEOC's Motion, finding the information sought is consistent with scope of discovery set forth in Federal

Rule of Civil Procedure 26(b)(1). Union Pacific is ordered to respond to Interrogatory 7, and provide any related privilege log, within 14 days of this Order.

## BACKGROUND

On September 29, 2023, the EEOC sued Union Pacific, asserting three claims under the ADA. (*See generally* Doc. 1.) According to the Complaint, Union Pacific used a color-vision deficiency test—the light cannon test mentioned above—to screen out workers who were otherwise qualified to be train conductors and engineers. (*Id.*) That test, according to the EEOC: resulted in Union Pacific disparately treating those who failed (Count 1); represented an unlawful qualification standard since failing workers could still safely do their jobs (Count 2); and led to unlawful medical inquiries for those who failed (Count 3). (*Id.*)

Union Pacific moved to dismiss the EEOC's Complaint, arguing that safety regulations promulgated by the Federal Railroad Administration ("FRA") require it to ensure that people who work as train engineers and conductors can recognize the colors of railway signals by testing their color-vision acuity. (*See generally* Docs. 12 (motion), 13 (memorandum in support).) According to Union Pacific, the FRA's color-vision acuity regulations are proper safety measures; its light cannon qualification test is consistent with those regulations; and thus, it cannot be held liable under the ADA for using the light cannon test as a safety qualification standard for conductors and engineers.

The Court denied Union Pacific's motion to dismiss in its entirety. (Doc. 58.) Relevant here, Judge Tostrud concluded that Union Pacific's "business necessity" defense—that is, the notion that the light cannon test was a permissible job-related

3

restriction, even if it had a disparate impact on some people with or regarded as having disabilities—was "inappropriate for resolution on a Rule 12(b)(6) motion." (*Id.* at 16.) "The proper time to consider the business-necessity question is at summary judgment[.]" (*Id.* at 17.)

Union Pacific then answered the EEOC's Complaint. (Doc. 59.) Among its affirmative defenses, Union Pacific again raised business necessity. (*Id.* at 8.) And Union Pacific asserted that it was not required to provide any accommodations to employees negatively affected by the light cannon test because those employees "posed a direct threat to health and safety of themselves and/or others that could not be eliminated by reasonable accommodation." (*Id.* at 7.)

Once discovery began, the EEOC propounded an interrogatory asking Union Pacific to "describe any measures Union Pacific has adopted to mitigate the risk of harm if any employee fails to accurately identify, interpret, and comply with a railway signal." (Doc. 132-1 at 8 (Interrogatory 7).) Union Pacific objected, asserting that any missed-signal mitigating measures had

> no tendency to make any fact that is of consequence in determining this action more or less probable . . .. The redundancies in place to mitigate the risk of harm caused by a passed signal does not impact the need for Union Pacific to comply with the FRA safety regulations that require color vision testing, including the use of the [light cannon test].

(*Id.*)

The EEOC has now moved to compel Union Pacific to respond to Interrogatory 7. (Docs. 128 (motion), 130 (memorandum in support).) It notes that Union Pacific pled a "direct threat" defense, which involves a multifactored analysis that includes considering the likelihood that the threat of harm will materialize. (Doc. 130 at 5.) Since one of Union

4

Pacific's defenses is that the threat of a train wreck from a missed signal is so great that it cannot provide accommodations to those employees it deems color-vision deficient, the EEOC asserts it ought to be allowed to learn whether that safety risk has been mitigated in other ways. (*Id.* at 5-8.)

For its part, Union Pacific focuses on the risk of having an engineer or conductor with color deficient vision—a risk "so great that no possible measures or redundancies could sufficiently mitigate the danger." (Doc. 136 at 1.) It is the FRA that determined this risk should be addressed through color-vision screening, says Union Pacific, and so questions about the railroad's *other* safety measures are of no moment. (*Id.* at 5-9.) But even if the railroad were not required to follow the FRA's color-vision screening standards, Union Pacific argues that the overwhelming harm that could be caused by conductors or engineers missing train signals (that is, a literal train wreck) is so pronounced that no other consideration matters under the traditional "direct threat" analysis. (*Id.* at 9-13.)

## ANALYSIS

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)), but the scope of discovery includes only what is relevant to the actual claims or defenses that are at issue, *see Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). And it is the party that seeks discovery who must make a threshold showing that the information sought is relevant to the claims or

5

defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). If that threshold is met, then "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

## I. THE FRA'S REGULATORY FRAMEWORK DOES NOT RENDER MITIGATING MEASURES IRRELEVANT.

Throughout its briefing and during argument, Union Pacific asserted that its focus on color vision testing is mandated by the FRA, and the reason it raised a "direct threat" defense is that "[t]he FRA—not Union Pacific—determined that conductors and engineers lacking color vision pose a direct threat to themselves and others." (Doc. 136 at 5.) "Thus," the railroad continues, "mitigating measures are irrelevant to Union Pacific's direct threat defense, which is rooted in its obligation to follow the minimal Federal safety standards set for engineers and conductors." (*Id.* at 9.)

Union Pacific is correct that the FRA has set safety standards for engineers and conductors. *See generally* 49 C.F.R. Pts. 240 (engineers); 242 (conductors). Union Pacific

6

is also correct that the FRA's regulations include color vision acuity standards for engineers and conductors. *See* 49 C.F.R. §§ 240.121(c)(3); 242.117(h)(3). And those color vision acuity standards can be met by passing certain FRA-approved tests. *See* 49 C.F.R. § 240, App. F(2); 49 C.F.R. § 242 App. D(2).

What Union Pacific ignores, however, is that the FRA's color vision regulations provide a basis for certifying engineers and conductors even if they *do not* pass the accepted color vision tests. *See* 49 C.F.R. §§ 240.121(e) (noting that engineer may be color-vision certified despite failing acuity test if "the medical examiner concludes that . . . the person has the ability to safely operate a locomotive") 242.117(j) (same for conductor); *accord* 49 C.F.R § 240, App. F(4) (noting that an engineer who fails an FRA-approved color-vision acuity test "may be further evaluated as determined by the railroad's medical examiner"); 49 C.F.R. § 242, App. (D)(4) (same for conductor). As the Court said in its Order denying Union Pacific's motion to dismiss, the inference from these regulations "is that those individuals who fail an accepted test but can safely perform their job duties may still be certified." (Doc. 58 at 5.) Union Pacific's argument that the FRA has deemed color vision deficiency an irrefutable direct threat to safety which no mitigating measures could remedy is not borne out by the FRA's regulations. As a result, this argument provides no basis to deny the EEOC's motion.

## II. UNION PACIFIC'S ASSERTION OF A "DIRECT THREAT" DEFENSE RENDERS DISCOVERY ON MITIGATING MEASURES RELEVANT.

Rule 26 provides the touchstone for discoverable material: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Broad

discovery is the norm," so long as it is "probative of the claim or defense that a party is trying to establish, or at least aimed at the discovery of evidence that could be." *Stecklein & Rapp Chartered v. Experian Info. Sols., Inc.*, 113 F.4th 858, 861 (8th Cir. 2024) (cleaned up). "The Federal Rules of Civil Procedure do not provide different discovery rules for defendants' theories and for plaintiffs' theories. Rather, the primary purpose of discovery is to allow both parties access to the facts behind the allegations." *Kirk v. Schaeffler Grp. USA, Inc.*, 13-cv-05032-DGK, 2014 WL 2807681, at *2 (W.D. Mo. June 20, 2014).

Union Pacific raised a "direct threat" defense to ADA liability. (Doc. 59 at 7.) That is, Union Pacific asserts that the danger posed by those who could not pass its color vision acuity tests "could not be eliminated by reasonable accommodation." (*Id.*; *see also* 42 U.S.C. § 12111(3); 29 C.F.R. § 1630.2(r) (defining "direct threat").) Analyzing a defendant's "direct threat" defense is a multifactored undertaking, considering (1) the duration of the risk; (2) the nature and severity of the possible harm; (3) the likelihood of the harm materializing; and (4) the imminence of the harm. 29 C.F.R. § 1630.2(r)(1)-(4).

Complete consideration of these factors—particularly the likelihood and imminence of the potential harm occurring—cannot be done without discovery on mitigating measures. It would be impossible for a court or jury to analyze Union Pacific's "direct threat" defense without also knowing whether there were other safeguards in place to protect against missed-signal train accidents. Union Pacific asserts, however, that the nature and severity of the potential harm from a train wreck is so catastrophic that no other "direct threat" factor matters.

8

Union Pacific may be right. Perhaps the Court or a jury determine that the risk of a train accident is so significant that it cannot be mitigated (other than through the color vision screening tests at issue). But it is not the Court's province to elevate one "direct threat" factor over the others to such an extent as to deny discovery into those other factors. Discovery disputes are generally not merits dictates, and there is no reason to stray from that path here. *Accord Brasier v. Union Pac. R.R. Co.*, 2023 WL 2754007, at *9 (D. Ariz. March 31, 2023) (rejecting, at summary judgment, Union Pacific's argument that safeguards against risk of incapacitated conductor were irrelevant because of catastrophic potential harm of train wreck; "this evidentiary conflict is best left for the jury").

In short, Union Pacific's assertion of a "direct threat" defense—and failure to abandon that defense[1]—opens the door to discovery on factors relevant to that defense. Applicable regulations make clear that a "direct threat" analysis must include consideration of the likelihood and imminence of harm, which ought to include measures designed to safeguard against the harm. Union Pacific's relevance objection provides no basis for it to resist discovery here.

### III. THE EEOC'S DISCOVERY REQUEST IS NOT OVERBROAD.

Finally, at the hearing on this matter Union Pacific expressed unease about the breadth of Interrogatory 7. According to the railroad, since its day-to-day operations are

---

[1] At the hearing on this matter, Union Pacific asserted that it was not pursuing a "direct threat" defense beyond its argument that the FRA already determined color vision deficiency is a direct threat to safety. But its Answer has no such limitation. Where a defendant asserts a viable defense, discovery related that defense is appropriate *Cf. Pharm. Rsch. & Manufacturers of Am. v. Williams*, 715 F. Supp. 3d 1175, 1186, 1192-95 (D. Minn. Feb. 8, 2024) (citation omitted), *objections overruled*, 728 F. Supp. 3d 986 (D. Minn. 2024).

9

steeped in safety concerns, properly answering the interrogatory would result in a laundry list of safety measure after safety measure. But Interrogatory 7 does not seek information about Union Pacific's general safety protocols. Rather, the interrogatory is cabined to measures "adopted to mitigate the risk of harm if an employee fails to accurately identify, interpret, and comply with a railway [] signal." (Doc. 132 at 8.) This is sufficiently tailored to allow Union Pacific to respond without undue burden, and is proportional to the needs of the case given the Court's determination that mitigating measures are directly relevant to one of Union Pacific's defenses.

## ORDER

Accordingly, based on the above and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1. Plaintiff's Motion to Compel Response to EEOC's Interrogatory 7 (Doc. 128) is **GRANTED**;

2. Defendant's response as ordered above is due within 14 days of this Order;

3. To the extent that Defendant maintains assertions of privilege as stated in its prior answer to EEOC's Interrogatory 7, it must produce a privilege log consistent with Federal Rule of Civil Procedure 26(b)(5)(A)(ii) with its answer to Interrogatory 7.

Dated:  September 18, 2025      _s/Douglas L. Micko_
                                DOUGLAS L. MICKO
                                United States Magistrate Judge