**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

U.S. Equal Employment Opportunity Commission,

Plaintiff,

and

Eric Aragon, Dale Carman, Fred Coleman, Robert Corrington, Andy Dettke, Jerry Garcia, Chris Hurley, Kent Kirk, Wayne Koch, Merlin Kulicke, Michael McSwain, Jeremiah Morris, Roy Myers, Dennis Naatjes, John Pendergraft, Randall Reeves, Robert Sample, Stephen Vejar, Timothy Wright, Vern Wright, Donald Barkmeier, Mike Bray, Jamaal Bunzy, Josh Butler, Paul Casares, James Davis, Rick Dickinson, Gary Downey, John Findley, Ralph Freed, Doug Harpster, Troy Heinzle, Lance Jenkins, Joseph Jones, Lance Lindquist, Gary Marlow, Matthew McCrillis, William Medich, Felipe Mojarro, Brian Murdock, Jason Norment, David O'Brien, Justin O'Dell, Shawn O'Neil, Gerald Ogle, Jeffrey Olson, Wayne Page, Wayne Palmer, John Pyka, Joshua Red Eagle, Michael Seematter, Marc Shannon, Jerrell Smith, Nathaniel Walker, Cory Walker, Corbin Williams, Carl Williams, Douglas Witte, Calvin Smith, and Ronald Garner,

Plaintiff-Intervenors,

v.

Union Pacific Railroad Company,

Defendant.

Case No. 23-cv-3030 (ECT/DLM)

**ORDER ON PLAINTIFF-INTERVENORS' MOTION TO COMPEL; DEFENDANT'S MOTION TO COMPEL; PLAINTIFF'S MOTION TO COMPEL,**

Before the Court are three Motions. First is Plaintiff-Intervenors' Motion to Compel Discovery (Docs. 197 (Motion), 199 (Memorandum in Support), 200 (Declarations in Support).) Second is Defendant Union Pacific Railroad Company's Motion to Compel Discovery (Docs. 206 (Motion), 207 (Brief in Support), 208 (Declarations in Support).) Third is Plaintiff Equal Employment Opportunity Commission's Motion to Compel (Doc. 218 (Motion), 220 (Memorandum).) For the reasons detailed below, the Court grants in part and denies in part Plaintiff-Intervenors' Motion (Doc. 197), grants Defendant's Motion (Doc. 206) as modified, and denies Plaintiff's Motion (Doc. 208).

**BACKGROUND**

This case raises questions about the relationship between federal antidiscrimination law and railway safety. Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") and several individual intervenors have sued Defendant Union Pacific Railroad Company ("Union Pacific") under the Americans with Disabilities Act of 1990 ("ADA"). (*See generally* Doc. 1.) Plaintiff and Plaintiff-Intervenors contend that Union Pacific uses a color vision test, sometimes referred to as the "light cannon" test, that inappropriately screens out qualified railroad conductors and engineers, regardless of whether those employees have a color vision deficiency, and regardless of whether those employees could safely do their jobs.

The EEOC filed its Complaint on September 29, 2023. (*See* Doc. 1.) Union Pacific moved to dismiss the Complaint (Doc. 12), which the Court denied in its entirety (Doc. 58). Union Pacific then answered the Complaint. (Doc. 59.) Discovery in this case is well

underway. And the Court has, already, issued orders related to the parties' discovery disputes. (*See* Doc. 139.)

Now, Plaintiff-Intervenors move to compel Union Pacific to produce discovery responsive to requests propounded on Defendant, specifically responses to their Interrogatory 13, Request for Production of Documents ("RPD") 21 and 23, RPD 17, and Interrogatory 11. (Docs. 197 (Motion), 199 (Memorandum in Support).) Broadly, this discovery seeks information related to decisionmakers who imposed work restrictions on Plaintiff-Intervenors, and discovery related to Plaintiff-Intervenors' essential job functions. Defendant Union Pacific also moved to compel discovery from Plaintiff-Intervenors, seeking Plaintiff-Intervenors' medical information and authorizations. (Docs. 206 (Motion), 207 (Brief in Support).) Finally, EEOC moves to compel discovery from Defendant related to the 2012 Goodwell train collision. (Docs. 218 (Motion), 220 (Memorandum).)

The Court heard argument on the parties' Motions on April 20, 2026, and this matter is now fully submitted. (Doc. 227 (Minutes), 231 (Transcript).) For the reasons described below, the Court grants in part and denies in part Plaintiff-Intervenors' Motion (Doc. 297); grants Union Pacific's Motion (Doc. 206); and denies the EEOC's Motion (Doc. 218.)

## ANALYSIS

Federal Rule of Civil Procedure 26 entitles parties to liberal discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts construe the scope of Rule 26(b)(1) broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman*

*v. Taylor*, 329 U.S. 495, 501 (1947)), but the scope of discovery includes only what is relevant to the actual claims or defenses that are at issue, *see Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). And it is the party that seeks discovery who must make a threshold showing that the information sought is relevant to the claims or defenses in the case. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). If that threshold is met, then "the party resisting production bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (quoting *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

Beyond being relevant, Rule 26 requires that information sought in discovery also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

## I. THE COURT GRANTS IN PART AND DENIES PLAINTIFF-INTERVENORS' MOTION TO COMPEL DISCOVERY.

The Court first address Plaintiff-Intervenors' Motion to Compel Discovery (Docs. 197 (Motion), 199 (Memorandum)), to which Union Pacific objects (Doc. 209). Through their Motion, Plaintiff-Intervenors seek discovery consistent with their Interrogatory No. 13, which asks for a list of "business objectives" for each individual who imposed work

restrictions on Plaintiff-Intervenors. Next, they seek discovery responsive to RPD Nos. 21 and 23, which involve the performance evaluation criteria of decisionmakers who imposed work restrictions on Plaintiff-Intervenors. They also seek responsive discovery to RPD No. 17, which requests applicable collective bargaining agreements ("CBAs"). Finally, they seek discovery responsive to Interrogatory No. 11, which requests the identification of any third-party consultants that participated in creating or changing Defendant's fitness for duty program. The Court considers each of these requests in turn.

**A. The Court denies Plaintiff-Intervenors' Motion to Compel as it relates to Interrogatory 13.**

The Court first considers Plaintiff-Intervenors' Motion to Compel discovery as to Interrogatory 13. Through this Interrogatory, Plaintiff-Intervenors seek a defined list of "Business Objectives" for each person Union Pacific claims made the decision to impose work restrictions on each Plaintiff-Intervenor, as well as for "each management individual who made a plaintiff intervenor's work 3 accommodation determinations rated themselves under Union Pacific's performance management processes in the year the decision was made." (Doc. 200-2 at 5.) Plaintiff-Intervenors represent that the individuals for whom "Business Objectives" are sought are likely just Dr. John Holland and Dr. Laura Gillis—Union Pacific's chief medical officers during the relevant times. (Doc. 199 at 10.) Defendant Union Pacific objects to Interrogatory 13 on the grounds that is vague, ambiguous, and unintelligible. (*Id*. at 6.)

Defendant's objections have merit. First, it is ambiguous to the Court what is, or is not, encompassed by "Business Objectives." Second, the second clause of Interrogatory

13, related to "each management individual," is phrased in a way that makes it impossible to answer; it is unclear what Plaintiff-Intervenors seek from Defendant through this Interrogatory. Because of this, the Court cannot determine based on the interrogatory itself whether the sought information is relevant to the claims at issue. Plaintiff-Intervenors' Memorandum in Support of its motion provides little, if any, clarity on these questions, and does not establish the relevance of their request. Plaintiff-Intervenors argue that Interrogatory 13 seeks information relevant to the motivations of decisionmakers, but, in the estimation of this Court, this does not adequately explain which material is encompassed by "Business Objectives." That leaves the Court unable to conclude whether the material sought is relevant, and, if relevant, whether the request is nonetheless improper due to its breadth. Accordingly, the Court denies Plaintiff-Intervenors' Motion as it relates to Interrogatory 13, as fatally vague, ambiguous, and unclear.

**B. The Court grants Plaintiff-Intervenors' Motion to Compel as it relates to Request for Documents No. 21.**

The Court next considers Plaintiff-Intervenors' Motion as it relates to Request for Documents No. 21, which seeks copies of "performance management process evaluations, supervisor evaluations, self-evaluations, goals, metrics, and ratings for each person Union Pacific claims made the decision to impose work restrictions on each plaintiff-intervenor and each management individual who affected [their] work accommodation determinations from 2012 to the present." (Doc. 200-1 at 6.) Union Pacific objects on the basis that Request No. 21 is "not reasonably calculated to lead to the discovery of admissible evidence" and is otherwise disproportionate to the needs of the case, ambiguous, overbroad, and

burdensome. (*Id.*) In their Memorandum, Plaintiff-Intervenors represent that these requests apply likely only to two individuals. (Doc. 199 at 10.) Plaintiff-Intervenors assert that it is highly relevant for them to obtain evidence of Union Pacific's "own criticism of the [people] who made the ultimate decision to rely on the light-cannon test to disqualify the Plaintiff-Intervenors." (Doc. 199 at 15.)

The Court agrees with Plaintiff-Intervenors. The decision to impose work restrictions on Plaintiff-Intervenors is the crux of this case. And so, certain information about Defendant's employees who made those decisions, including evaluations of their work performance, is relevant to the claims at issue. The Court notes Defendant's contention that Plaintiff-Intervenors' make incorrect statements in support of their argument, but it does not find that this undermines the relevance of the discovery sought. Finding performance-related discovery for Dr. Holland and his successor, Dr. Gillis, relevant, the Court grants Plaintiff-Intervenors request as to Request for Documents No. 21 as to Dr. Holland and Dr. Gillis.

**B. The Court grants Plaintiff-Intervenors' Motion to Compel as it relates to Request for Documents No. 23.**

Next, the Court considers Plaintiff-Intervenors' Motion as it relates to Request for Documents 23, which seeks

> all policies, rules, and procedures that document Union Pacific's performance management processes, including but not limited to the policy, objectives and development goals, metrics by which those goals are calculated, and any other document that corresponds to this category of documents, that were in place between 2012 to the present for all personnel within the Health and Medical Services Department involved in the implementation of the light cannon test, including but not limited to Dr. John Holland and Debra Gengler.

(Doc. 200-1 at 7-8.) Plaintiff-Intervenors argue that these materials are relevant because they go to the motivations of employees who developed the light cannon test and imposed the work restrictions at issue on each Plaintiff-Intervenor. Defendant objects on the grounds that this request is vague, ambiguous, and unintelligible as written, and temporally overbroad. (*Id*. at 8.)

The Court agrees with Plaintiff-Intervenors. For similar reasons as it grants Request No. 21, the Court finds that the performance evaluations and metrics used to evaluate those who implemented the vision test at issue are relevant to the claims at issue. Additionally, because of the small class of employees to whom this request applies, there is no undue burden for Union Pacific to respond. Accordingly, the Court grants Plaintiff-Intervenors' Motion as it relates to Request No. 23.

### C. The Court denies Plaintiff-Intervenors' Motion as it relates to Request for Documents No. 17.

Next the Court considers Plaintiff-Intervenors' Motion as it relates to Request for Documents No. 17, which seeks "collective-bargaining agreements between Defendant and the union(s) that represent(ed) Defendant's locomotive engineers, conductors, and other Train Service employees, including all attachments, side letters, schedules, and other parts incorporated by reference in the agreements, that were or are in effect from January 1, 2014, to present." (Doc. 200-3 at 9.) Plaintiff-Intervenors argue that the requested applicable CBA's are relevant to establish the essential job functions that Plaintiff-Intervenors were deemed unable to perform. Additionally, says Plaintiff-Intervenors, the contents of the CBAs are relevant because they contain a provision that affect damages

calculations. And because Union Pacific is a party to the CBA's, the request is proportionate and the burden limited. Defendant, for its part, objects on the grounds that Request No. 17 seeks information that is overbroad, unduly burdensome, and irrelevant and disproportionate to the needs of the case.

The Court agrees with Defendant. One of Rule 26's touchstones is the burden inquiry, which shields relevant discovery from production when it would be overly burdensome to produce, or is more accessible from alternate sources. Here, the Court finds that Request No. 17 would unduly burden Union-Pacific. That is particularly true here, where Plaintiff-Intervenors themselves are already familiar with their essential job functions, could request their own personnel files, and, as parties to the CBA's themselves, could access this discovery without Defendant's aid. *See Deluxe Fin. Servs., LLC v. Shaw*, No. 16-cv-3065 (JRT/HB), 2017 WL 7369890, at *5 (D. Minn. Feb. 13, 2017) ("Among other considerations, the Court can consider whether and to what extent the discovery sought can be more easily obtained from another source, [including] from the parties themselves."). Because the requested discovery could be sourced (and perhaps more easily sourced) by Plaintiff-Intervenors themselves, the Court finds this request unduly burdensome on Defendant. Accordingly, the Court denies Plaintiff-Intervenors' Motion as it relates to Request for Documents No. 17.

### C. The Court denies Plaintiff-Intervenors' Motion as it relates to Interrogatory No. 11.

Interrogatory No. 11 asks Union Pacific to "[i]dentify any third-party individual consultant or consulting company that participated in the creation of or any changes to

Union Pacific's fitness for duty program as it existed between 2012 to the present." (Doc. 200-2 at 5.) Union Pacific objects to this Interrogatory, arguing that it is not "reasonably calculated to lead to the discovery of admissible evidence" and otherwise seeks information irrelevant to Plaintiff's claims that is disproportionate to the needs of the case. (*Id.*) Plaintiff-Intervenors represent that while Defendant has provided some responsive discovery, it has not produced fulsome information related to any third-party consultants who may have advised on changes to the light cannon test after it had been implemented.

While the Court understands that the inception and use of the light cannon exists within the broader context of Defendant's fitness for duty program, discovery is not so global as Plaintiff-Intervenors contend. It does not, for instance, extend to the identity of *all* third parties who consulted with Defendant to advise on changes to the fitness for duty program. That program, as Defendant notes, encompassed much more than the vision test at issue here, such that discovery about the program in it is entirety is too far afield. Accordingly, the Court determines that Interrogatory No. 11 seeks information beyond the bounds of relevance, and too attenuated to the claims at issue, to justify compelling the information sought. Additionally, Plaintiff-Intervenors have received the slice of relevant information that Interrogatory No. 11 encompasses—third party consultant identifications related the development of the light cannon test. (Doc. 200-11 at 2.) While Plaintiff-Intervenors point out that Union Pacific has not answered whether third-party consultants advised on *changes* to the light cannon test after it had been implemented—as opposed to consultants involved in the *developme*nt of the test—the Court finds this distinction only minimally relevant. Finding that potential third-party consultants involved in changes to

the fitness for duty program after the test's implementation to be of insufficient relevance to Plaintiff-Intervenors, the Court denies their the Motion as to Interrogatory No. 11.

## II. THE COURT GRANTS DEFENDANT'S MOTION TO COMPEL.

Next before the Court is Defendant's Motion to Compel (Docs. 206 (Motion), 207 (Brief).) Plaintiff-Intervenors and Plaintiff oppose the motion. (Docs. 213 (Plaintiff-Intervenor's Response in Opposition), 217 (Plaintiff's Response in Opposition).) Through its Motion, Defendant Union Pacific seeks to compel discovery related to its Request No. 7, which seeks "[d]ocuments relating to any health-care examination or treatment You have received from five years to your removal from service to the present. For each health-care provider who examined or treated You, please also execute a Medical Authorization in the attached form for the same time period." (Doc. 208-3 at 6.) Plaintiff-Intervenors object on the ground that the Request is duplicative, overbroad, burdensome, and seeks protected documents. (*Id.*) Plaintiff-Intervenors refuse to sign the authorizations. (*Id.*)

Union Pacific argues that the medical records sought are relevant because Plaintiff-Intervenors themselves have placed their medical history at issue. This is because the question of whether Plaintiff-Intervenors were medically capable of performing their essential job functions goes toward a necessary element of their disability discrimination claims. And, says Union Pacific, Plaintiff-Intervenors have asserted that they *did* successfully perform their essential job functions. (*See* Doc. 105 ¶ 14.) Defendant also represents that the requests are proportional because it limits its request for medical records and healthcare provider identifications to the five years before a Plaintiff-Intervenor's removal from service to the present. (Doc. 207 at 9.) Union Pacific further represents that

any argument on burden is without merit because it seeks a Medical Authorization, which means that Union Pacific may obtain records directly from medical providers. Plaintiff and Plaintiff-Intervenors object. They argue that the request should be denied, since the only medical condition at issue is Plaintiff-Intervenors' color vision acuity and Plaintiff-Intervenors have agreed to produce vision-related medical records. (*See* Doc. 208-1 at 5.) Plaintiff-Intervenors argue that Defendant's argument that it should be entitled to discovery bearing on whether they were "unqualified by reason of any medical condition" (Doc. 207 at 7) is without merit because the decision to impose work restrictions was solely based on color vision screening. (Doc. 214-2 at 20.) Plaintiff-Intervenors also represent that they have agreed to produce medical records, but only those from their primary care providers and from the date of removal from service to the present.

Weighing the arguments on both sides, the Court agrees with Defendant. To prevail on an ADA claim, a plaintiff must "prove that she held or desired a job and could perform its essential functions with or without reasonable accommodation, at the time of an employer's alleged act of disability-based discrimination." *Stanley v. City of Sanford, Fla*., 606 U.S. 46, 65 (2025). Accordingly, Plaintiff-Intervenors' physical ability to perform their essential job functions at the time work restrictions were imposed is critical evidence. And by that token, discovery related to Plaintiff-Intervenors' physical medical history is relevant under Rule 26 to the claims at issue here, where Defendant is alleged to have imposed work restrictions upon employees capable of performing their essential job functions. This accords with the holdings of courts across the country, which routinely order discovery related to medical records where those matters are placed in controversy

in ADA cases. *See Jacobs v. Mercy Health*, No. 4:22-cv-01204-AGF, 2023 WL 7298770, at *4 (E.D. Mo. Nov. 6, 2023) ("Medical records are routinely found to be relevant in the context of ADA cases."); *see also Henne v. Great River Reg'l Libr.*, No. 19-cv-2758 (WMW/LIB), 2021 WL 6804560, at *8 (D. Minn. Jan. 4, 2021) (finding good cause to submit Plaintiff to psychological examination when ADA Plaintiff put mental health at issue).

The Court, however, makes two adjustments to cabin Defendant's requests in satisfaction of Rule 26's mandate of proportionality. First, the Court agrees that while the records of Plaintiff-Intervenors physical health are relevant to the ADA claim here, the mental and chemical health records of those parties are not because those matters are not at issue.[1] Those records are therefore excluded. Second, the Court limits the production of discovery to three years before Plaintiff-Intervenors' removal from service to present—not the five years of the request as written by Defendant. With those limits in place, the Court grants Union Pacific's Motion to Compel (Doc. 206).

## III. THE COURT DENIES EEOC'S MOTION FOR DISCOVERY.

[1] The Supreme Court has recognized a broad psychotherapist-patient privilege, and cautioned that courts should exercise great sensitivity when considering requests for discovery for mental health records. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). Compelling the production of mental health records is not sufficiently relevant to the live claims here, because the mental conditions of Plaintiff-Intervenors are not at issue. *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 985 (N.D. Ill. 2010) (holding that ADA plaintiffs are not required to reveal all confidential mental health information simply for suing where no mental health issues were placed at issue); *see also Dochniak v. Dominium Mgmt. Servs., Inc.*, 240 F.R.D. 451, 452 (D. Minn. 2006) (affirming magistrate judge's order denying production of mental health records of plaintiff who brought non-ADA sexual harassment claims against employer because plaintiff did not place her mental health sufficiently at issue).

Finally, the Court considers EEOC's Motion for Discovery (Docs. 218 (Motion), 220 (Memorandum).) Through its Motion, EEOC moves the Court to order Union Pacific to produce documents and information responsive to EEOC's RPD Nos. 43 and 44, which request "(1) personnel documents of the locomotive engineers and conductors involved in the June 24, 2012, head-on collision, near Goodwell, Oklahoma; and (2) documents and communications regarding the collision near Goodwell, Oklahoma." (Doc. 218 at 1.) EEOC argues that these requests are relevant to Defendant's arguments that the light cannon test was job-related and a business necessity, and whether the imposition of the test was pretextual. Union Pacific, for its part, objects to both requests. (Doc. 225.) It contends that through these requests, EEOC seeks to recast this case "into a sweeping inquiry into a decade-old federal accident investigation" that is not at issue here. (*Id*. at 1.) Union Pacific does not dispute that the National Transportation Safety Board ("NTSB") issued a report after the Goodwell incident that explicitly recommended that Union Pacific replace its color vision field test. (*See* Doc. No. 220-3 at 56.) But, says Defendant, discovery related to the *cause* of Goodwell collision is neither proportional nor relevant to this litigation and instead represents an attempt to create a "Mini-Trial" within this litigation to challenge the Report. (Doc. 225 at 5.) The Court agrees.

Plaintiff's Motion situates the instant litigation in the context of a tragic train wreck that occurred more than a decade ago. But this case is actually about what happened *since* that crash: the development and implementation of a color vision acuity test intended to mitigate the risk of future accidents. It is too thin a reed to endorse the notion that digging

into the personnel records, documents, and communications of those involved in the accident precipitating that test is relevant to litigation about the efficacy of that test. Certainly, the Goodwell collision and subsequent report provide general context in the inception and use of the light cannon test by Defendant. But the claims here concern the lawfulness of the color vision work restrictions imposed on Plaintiff-Intervenors, not whether color vision deficiency was the most likely cause of the Goodwell collision, or whether Defendant's creation of the light cannon test was "overly draconian" response to that collision. (Doc. 220 at 8.) Because the relevance of the discovery sought is too attenuated to the claims at issue here, the Court denies EEOC's Motion to Compel (Doc. 218) in full.

**ORDER**

Accordingly, based on the above and on all the files, records, and proceedings in this action, **IT IS ORDERED** that:

1. Plaintiff-Intervenors' Motion to Compel (Doc. 197) is **GRANTED** as to
    a. Request for Documents Nos. 21 and 23;
    b. Defendant's response as ordered above is due within 14 days of this Order;
2. Plaintiff-Intervenors' Motion to Compel (Doc. 197) is **DENIED** as to all other requests.
3. Defendant Union Pacific's Motion to Compel (Doc. 206) is **GRANTED as modified**.
    a. Plaintiff-Intervenors' responses are limited to physical medical authorizations from three years from termination.

b. Plaintiff-Intervenors' response as ordered above is due within 14 days of this Order;

4. Plaintiff EEOC's Motion to Compel (Doc. 218) is **DENIED** in full.

Date: August 17, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge